IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KARON RAYOSHA HOWARD,<br><br>Defendant. | Case No. 2:22-cr-02 |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by Jessica D. Aber, United States Attorney, Joseph E. DePadilla and William B. Jackson, Assistant United States Attorneys, now submits its position with respect to sentencing in accordance with the Order of this Court. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 92 to 115 months plus 60 months consecutive. In accordance with § 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation. The defendant has two outstanding objections which are addressed below. The United States respectfully submits, for the reasons outlined below, a sentence at the top of the guideline range would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

I. **MOTION FOR ACCEPTANCE OF RESPONSIBILITY**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

II. **OBJECTIONS**

<u>Paragraph 20.</u>

The defendant objects to being attributed with 3 or more firearms. Two firearms were recovered in his residence. A search warrant conducted on his phone, and a search warrant conducted yielded evidence that the defendant previously purchased at least four firearms; Taurus PT 840C, .40 caliber, semi-automatic handgun (Serial No.: SGY26711) on February 7, 2015, a Kel-Tec P-11, 9- millimeter, semi-automatic handgun (Serial No.: AA2Z53), a Bersa .380 semi- automatic pistol (Serial No.: C15413), and a Glock 23, .40 caliber, semi-automatic handgun (Serial No.: AAME830) on January 12, 2017. The defendant also sold two firearms; Taurus PT 840C, .40 caliber, semi-automatic handgun (Serial No.: SGY26711) (previously purchased on February 7, 2015) date of sale unknown, and a Glock 21, .45 caliber automatic colt pistol (Serial No.: VYL027) on June 10, 2017. The government believes this guideline section has been correctly applied.

Paragraph 21.

The defendant objects to this enhancement because he alleges he was not "engaged in the trafficking of firearms" as he claims he did not have reason to know the people he was selling the guns to had the intent to use or dispose of the firearms illegally. This defendant was apprehended and charged in the instant case because he sold a machine gun to Shy'Quan Dodson, a local gang leader. Afterward, Mr. Dodson got into a gun battle with his rivals and fled the police. There was no lawful way Mr. Dodson could have possessed the machine gun legally, so the sale must be illegal as well. The government believes this guideline section is correctly applied.

### III.   BACKGROUND

The defendant, KARON RAYOSHA HOWARD, was named in a four-count Indictment returned in the Eastern District of Virginia, Norfolk Division, on January 5, 2022. PSR ¶ 2. Count One charges the defendant with illegal possession of a machine gun, in violation of 18 U.S.C. § 922(o), Count Two charges the defendant of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, Count Three Charges the defendant with possession with intent to distribute marijuana in violation of 21 U.S.C. §841; and Count Four charges the defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c). Criminal Forfeiture was also cited pursuant to 18 U.S.C. § 924(d) by 28 U.S.C. § 2461. PSR ¶ 2.

On February 4, 2022, in accordance with the terms of a written Plea Agreement, the defendant appeared before a United States Magistrate Judge. PSR ¶ 3. Sentencing was deferred before this court until August 26, 2022. PSR ¶ 3.

### IV. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that sentencing courts should consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. at 264. The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b) (1) (B)). In its decision in *Molina-Martinez v. United States*, the Court emphasized the role the Guidelines play in achieving "[u]niformity and proportionality in sentencing," and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1346 (2016). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B).

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in

§ 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

## V.    ARGUMENT

### A.    Nature and Circumstances of the Offense.

The defendant's crimes, and the flagrant disregard for community safety behind them, are immensely serious. The defendant sold a machine gun to a dangerous gang member, Shy'Quan Dodson. (Dodson) (Related Case 2:22-cr-1) On July 18, 2021, Dodson was involved in a shootout near the 900 block of Tunstall Avenue in Norfolk. ECF 17 ¶ 2. Fortunately, Norfolk police officers were already in the vicinity and observed the shootout. 2:22-cr-1 ECF 17 ¶ 2 and 3. The officers pursued one of the vehicles into the City of Portsmouth. ECF 17 ¶ 3 and 4. During the pursuit, someone in the fleeing car tossed a firearm out of the window; the gun was later recovered. ECF 17 ¶ 3. Attached to the firearm, a semi-automatic pistol, was a conversion kit (also known as a "switch" or "auto sear") that converted the firearm into a fully automatic machine gun. ECF 17 ¶ 5 and 6.

The fleeing vehicle ultimately crashed into another car in Portsmouth, and Dodson then attempted to flee on foot. ECF 17 ¶ 4. After he was apprehended, a gunshot residue test confirmed that there was gunshot residue on Dodson's hands. ECF 17 ¶ 7. Further, Dodson's phone

contained multiple photos of him possessing the firearm that was tossed from the vehicle during the pursuit. ECF 17 ¶ 9.

The proliferation of conversion kits has drawn national attention. On April 11, 2022, 40 members of Congress signed a letter to the ATF urging it to take action to stem proliferation of these devices.[1] "The Bureau of Alcohol, Tobacco, Firearms and Explosives, the federal agency responsible for policing guns in the U.S., said it seized 1,500 weapons modified with auto sears in 2021, a staggering increase over 2020, when only 300 were recovered."[2] These conversion devices are often smuggled into the United States from China. However, many, as in this case, were built using a 3D-printer.[3] Using 3D printing technology to create these illegal switches means that a device that would normally cost a substantial amount of money can now be obtained for as little as $20.00.[4] The combination of a high-capacity magazine with a conversion kit can inflict incredible damage over a wide geographic range within just seconds.

Police searched Dodson's phone and realized through the defendant's electronic messages with Dodson that this defendant sold Dodson that machine gun. Police obtained a search warrant of the defendant's home and found one auto sear kit mounted on a Glock firearm and one kit that was available to mount on another gun. PSR ¶ 7. The police also discovered the defendant was a drug dealer. *Id.* The defendant was quite open with police initially. He said, in sum and substance, "I didn't purchase an auto sear. I got a gun with the auto sear on it. It came that way … as far as guns, I play with guns, that's what I do. I've been toting guns … if you look at my record, I be

---

[1] https://carbajal.house.gov/uploadedfiles/2022-04-11_letter_to_atf_on_auto_sears_final_copy.pdf
[2] https://www.thetrace.org/2022/03/auto-sear-gun-chip-glock-switch-automatic-conversion/
[3] *Id.*
[4] *Id.*

catching gun charges since I was sixteen, you feel me? Like if you look at my record … I'm always gonna go to jail for firearms. You feel me? I'm gonna have a gun on me." *Id.* The defendant refused to tell the police where he obtained the auto sear kits and did not admit to providing one to Dodson. That caused the case to go cold and the police are still using resources to determine who these items are flooding into the community.

The defendant's conduct is egregious. His statement to police expresses that he has absolutely no respect for the gun laws in this community and his decision to acquire even more lethal weapons than is the norm shows he is an escalating danger. Dodson never would have had the machine he used to conduct a shoot-out on a residential street—a place where regular citizens attempting to raise their children and go about their daily lives—should not have to live under the threat of gun violence, much less the extraordinarily amplified threat posed by the use of machinegun conversion kits. The fact that the defendant is so cavalier about machine guns and his admission that he is "always going to have a gun" does not appear to be a belief that will change over time.

  **B.**  **History and Characteristics of Defendant.**

The defendant is 28 years-old and was raised in the Olde Huntersville area located in Norfolk. PSR ¶ 59. The defendant's mother was murdered when he was 4. *Id.* The defendant's father was murdered when he was 9. PSR ¶ 60. The defendant's grandmother, a bus driver, raised him. PSR ¶ 61. The defendant has several children and has been described as a "good dad" by some of the children's mothers. PSR ¶ 63. The defendant has admitted to law enforcement in the past that he is a gang member. PSR ¶ 65. The defendant has a substance abuse problem. PSR ¶ 70. The defendant was telling the police the truth about his fascination with firearms. The vast

7

majority of his criminal convictions are related to weapons and have led to his designation of a Criminal History Category VI. PSR ¶ 41-49.

        **C.**        **Other Factors to be Considered under 18 U.S.C. § 3553(a).**

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to afford adequate specific deterrence to future criminal conduct, general deterrence for those contemplating similar schemes, and the promotion of respect for the law. The message to the community must be clear: using an illegal machine gun on a residential street will lead directly to a substantial jail sentence.

The need for individual and general deterrence is especially significant considering the nature of this offense and the defendant's gang affiliation. General deterrence is achieved even if the sentence in this case dissuades a single gang member from committing a similar crime.

The proliferation of firearms and conversion kits that turn semi-automatic weapons into machineguns capable of firing more than a thousand rounds a minute are killing our communities. The ability to fire an entire magazine of ammunition with one pull of the trigger leads to the undisciplined spraying of bullets into the houses, cars, and bodies of innocent victims uninvolved in the petty gang beefs at the heart of the spate of violence Norfolk has faced since the start of the pandemic. The results are often devastating, and the defendant here did not just possess a machinegun – he sold one to another gang member who knowingly used it to devastate a residential street.

The proscribed guideline range would be appropriate if the defendant had only possessed the machine. In this case the defendant chose to use the machine gun deliberately on civilian streets against other human beings. When the police responded, the defendant chose to flee further

8

exacerbating the situation. The only way the defendant could have made the situation worse would have been to engage the police instead of fleeing from then. If he had made that decision, he would have had far more firepower than the police officers who were trying to apprehend him. An upward variance to 120 months would properly address the difference between possessing a machine and choosing to use a machine gun.

### VI. CONCLUSION

While punishment is one factor to consider, the United States focuses its recommended sentence on the need to protect the public and the need for general deterrence. These facts are significant and merit a sentence that will deter this defendant and the other members of his gang and others in the local area from seeking out and using machineguns. Taking all the 3553(a) factors into account, the government submits that an upward variance to 120 months would promote respect for the law, deter further criminal conduct, and is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____//s//_____
Joseph E. DePadilla
William B. Jackson
Assistant United States Attorneys
Graham Stolle
Special Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
Email: joe.depadilla@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to Anthony M. Gantous, attorney of record.

I further certify that on this 12th day of August, 2022, I caused a true and correct copy of the foregoing Position of the United States with Respect to Sentencing Factors to be emailed to the following:

Joshua A. Coleman
United States Probation Officer
600 Granby Street
Suite 200
Norfolk, Virginia 23510

By: \_\_\_\_//s//_____
Joseph DePadilla
United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
Email:  joe.depadilla@usdoj.gov